UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-CV-10177

SCOTT R. WHELDEN and NICOLE C. WHELDEN, Plaintiffs

v.

U.S. BANK NATIONAL ASSOCIATION and SELECT PORTFOLIO SERVICING, INC., Defendants

<u>MEMORANDUM & ORDER</u>

October 13, 2020

ZOBEL, S.D.J.

Plaintiffs Scott and Nicole Whelden filed suit in Nantucket Superior Court against defendant U.S. Bank National Association (U.S. Bank), as successor Trustee for WAMU Mortgage Pass-Through Certificates, Series 2007-HY6, and defendant Select Portfolio Servicing, Inc. (SPS) to prevent foreclosure on their home. Defendants removed the action to this court and now move to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

I.   **Factual Background**

The following facts are derived from plaintiffs' complaint and the exhibits filed therewith:

On March 30, 2007, plaintiffs granted a mortgage, secured by their home, to Washington Mutual Bank for an $800,000 loan. The mortgage was subsequently assigned to defendant U.S. Bank. Defendant SPS is the loan servicer.

1

The mortgage has been in default since 2014. In October 2018, plaintiffs submitted a loan modification application to SPS, and in the same month, sought to sell a subplot of the property to raise the funds to reinstate the mortgage. At the time, the amount required to cure the default was $388,793. Plaintiffs sent the signed offer to purchase a subplot for $420,000 to SPS, which orally agreed to the sale on the condition that the Nantucket Zoning Board approved it. Plaintiffs hired counsel and procured appraisals and surveys to obtain the authorization. The Zoning Board approved the sale which was nonetheless aborted because SPS would only agree to the mortgage reinstatement if plaintiffs paid over the full $420,000 subplot sale price, not the $388,793 due.

In March 2019, plaintiffs received a cash offer for $1.3 million to purchase the entire property. The mortgage payoff amount was then approximately $1 million. Plaintiffs submitted the offer to SPS and attempted to reduce the mortgage payoff to $800,000 "to account for late fees, interest, penalties and attorney fees accrued while Defendants failed to adequately review the loan modification and sub-plot offer."

In April 2019, SPS informed plaintiffs that it would not proceed with the loan modification application because they could not process it at the same time as the payoff. On May 28, 2019, SPS notified plaintiffs that they could retain a maximum of $3,000 after the payoff and that a short sale might be possible. From May to October 2019, defendants requested, and plaintiffs provided, additional documents and information to process the sale. In October 2019, SPS closed the short sale listing period without approving the $1.3 million offer to purchase and scheduled the property for foreclosure. Plaintiffs filed this suit on January 3, 2020 to enjoin the sale.

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice, In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003), but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint, Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

## III.   Discussion

### a. Negligence (Count I) and Negligent Infliction of Emotional Distress (Count VIII)

To sustain a claim for negligence under Massachusetts law, plaintiffs must show: (1) a legal duty owed by defendants to plaintiffs; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury. See Jorgensen v. Mass. Port Auth., 905 F.2d 515, 522 (1st Cir. 1990). Count I alleges that defendants had a duty of good faith and reasonable diligence in the foreclosure process. Plaintiffs claim defendants breached that duty by failing to evaluate their request for loan modification and by failing to properly respond to the offer to purchase a subplot of the property and the offer to purchase the entire property. They claim they spent thousands of dollars in getting the

subplot approved by the zoning board and defending against foreclosure proceedings because of defendants' breach.

Defendants nonetheless assert that plaintiffs' negligence claim is barred by the economic loss doctrine, which holds that "[i]n the context of ordinary negligence claims in tort actions . . . 'purely economic losses are unrecoverable . . . in the absence of personal injury or property damage.'" Cummings v. HPG Int'l., Inc., 244 F.3d 16, 24 (1st Cir. 2001) (quoting FMR Corp. v. Boston Edison Co., 613 N.E.2d 902, 903 (1993)). Moreover, "the mere relationship between mortgage holder or servicer and borrower does not give rise to a fiduciary duty to the latter." Shaw v. BAC Home Loans Servicing, LP, No. 10–11021–DJC, 2013 WL 789195, at *4 (D. Mass. Mar. 1, 2013). Plaintiffs do not assert any non-economic loss and fail to show that defendants owed them a duty of care. Thus, the motion to dismiss is allowed as to Count I.

Plaintiffs' failure to show that defendants owed them a duty of care also precludes a claim for negligent infliction of emotional distress (Count VIII). See Penney v. Deutsche Bank Nat'l Tr. Co., No. 16-CV-10482-ADB, 2017 WL 1015002, at *6 (D. Mass. Mar. 15, 2017) (citing Jupin v. Kask, 849 N.E.2d 829, 834-35 (Mass. 2006) ("The first element of NEID, negligence, requires that the Defendants owe a duty to the Plaintiffs."). Accordingly, the motion is allowed as to Count VIII.

**b.** Violation of M.G.L. c. 244 § 35B (Count II)

Under Mass. Gen. Laws ch. 244, § 35B(b), creditors for "certain mortgage loans" must take "reasonable steps and ma[ke] a good faith effort to avoid foreclosure" before publishing notice of a foreclosure sale under Mass. Gen. Laws ch. 244, § 14. Plaintiffs

assert that defendants violated § 35B when they failed to consider their October 2018 application for loan modification.

Defendants contend that plaintiffs do not set forth facts to establish that their loan was a "certain mortgage" under § 35B. Plaintiffs offer a July 19, 2018 affidavit wherein SPS certified under pains and penalties of perjury that "[t]he requirements of M.G.L. Chapter 244 Section 35B have been complied with" for plaintiffs' mortgage. In addition, plaintiffs allege that they made interest-only payments from May 1, 2007 to April 1, 2014. Section 35B(a) defines a certain mortgage loan as one where, inter alia, there were interest-only payments for any period of time. Plaintiffs have sufficiently alleged that they had a certain mortgage loan entitled to § 35B protection.

A separate question is whether defendants met the § 35B requirements.[1] The statute provides that a creditor has made reasonable, good faith efforts to avoid foreclosure if the creditor considered "(i) an assessment of the borrower's ability to make an affordable monthly payment; (ii) the net present value of receiving payments under a modified mortgage loan as compared to the anticipated net recovery following foreclosure; and (iii) the interests of the creditor, including, but not limited to, investors." M.G.L. c. 244, § 35B(b). The creditor enjoys a presumption of good faith and reasonable steps if, inter alia, it issues a written summary of its analysis when denying a loan modification application. M.G.L. c. 244, § 35B(b)(2). Plaintiffs allege that defendants violated § 35B because they did not supply a detailed written denial. The motion to dismiss does not dispute this fact. Defendants maintain that they nonetheless

---

[1] The affidavit does not "relieve the affiant, or other person on whose behalf the affidavit is executed, from liability for failure to comply with this section, including by reason of any statement in the affidavit." Mass. Gen. Laws ch. 244, § 35B(f).

made reasonable good faith efforts to help plaintiffs avoid foreclosure because they agreed to release a part of their security interest for $420,000, which would have allowed plaintiffs to sell a subplot of the property and reinstate the mortgage.

However, whether U.S. Bank's offer to release a portion of their security interest for $420,000 constituted "reasonable steps and good faith efforts" is a contested question of fact, and cannot, therefore, support dismissal of Count II.

### c. Violation of Paragraphs 19 and 22 of the Mortgage Contract (Count III) and Breach of Contract (Count VII)

The mortgage contract provides that the borrower has a right to reinstate the defaulted mortgage after acceleration if the borrower:

> (a) pays lender all sums which would then be due under this Security Instrument and the Note as if no acceleration had occurred;
>
> (b) cures any default of any other covenants and agreements;
>
> (c) pays all expenses incurred in enforcing this Security Instrument . . .; and
>
> (d) takes such action as Lender may reasonably require to *assure that Lender's interest in the Property* and rights under this Security Instrument, *shall continue unchanged.*

Compl., Ex. A at ¶ 19 (emphasis added). Plaintiffs claim that defendants violated Paragraph 19 by charging $420,000 to reinstate the mortgage instead of the $388,793 owed. This allegation falls short. A reinstatement by subplot sale would have violated the plain meaning of paragraph 19(d) as it would have altered the lender's security interest in the property. Defendants' proposal to release their security interest in exchange for $420,000 and reinstatement was a separate offer that plaintiffs declined.

Plaintiffs also claim that they never received notice of acceleration in accordance with paragraph 22 of the mortgage. Defendants argue that plaintiffs fail to state a claim because under paragraph 15 of the mortgage contract, "[a]ny notice to Borrower in

6

connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail" and the complaint is silent about whether notice was sent. However, it is a "reasonable inference that, since Plaintiff alleges to have not received notice, one was never sent." Lamonica v. Fay Servicing, LLC, 352 F.Supp.3d 138, 141 (D. Mass. 2018).

Count VII further alleges breach of contract for failure to consider the plaintiffs for a loan modification. "[A]bsent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults." MacKenzie v. Flagstar Bank, 738 F.3d 486, 491 (1st Cir. 2013) (internal citations omitted). Plaintiffs do not specify, and the mortgage contract does not appear to include, a provision that obligated defendants to consider the borrowers for loan modification.

Counts III and VII survive the motion to dismiss only to the extent that plaintiffs allege a violation of paragraph 22 of the contract.

**d.** Promissory Estoppel (Count IV)

To establish a claim for promissory estoppel in Massachusetts, a plaintiff must allege "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court, 858 N.E.2d 699, 711 (Mass. 2006) (internal citations omitted).

Plaintiffs allege that they "relied on Defendant's reassurances and statements that if the Nantucket Zoning Board approved the sale of the subplot, the reinstatement

7

amount of the $386,793^2$ would be accepted from the sale." They procured plot plans, surveys, and appraisals and incurred attorney's fees based on SPS's repeated representations. After the zoning board approved the subdivision, SPS declined to reinstate the mortgage for $388,793, insisting on $420,000. Plaintiffs allege that they lost thousands of dollars pursuing the zoning board's consent because defendants failed to honor the original terms of the deal.

Defendants argue two deficiencies in plaintiffs' allegations. Both are unavailing. First, defendants assert that the complaint does not establish the first element of a promissory estoppel claim because it does not include an "allegation that Defendants agreed to accept the reinstatement amount, and nothing more, in order to release a sizeable portion of its security interest." Whether defendants agreed to release the security interest in the subplot for $388,793 is a disputed question of fact. Defendants further contend that any oral agreement by the bank for a partial release of its mortgage is unenforceable under the Statute of Frauds. Mass. Gen. Laws ch. 259, § 1. "Any promise involving real property is enforceable only if that promise meets the requirement of the statute of frauds." Schwanbeck v. Federal-Mogul Corp., 592 N.E.2d 1289, 1293 (Mass. 1992). However, the Statute of Frauds does not bar relief where the plaintiff detrimentally relied on an oral agreement and the denial of relief would cause an injustice. See Levin v. Rose, 19 N.E.2d 297, 298 (Mass. 1939).

Plaintiffs plausibly allege a claim for promissory estoppel. Defendants' motion to dismiss Count IV is denied.

e. Breach of Covenant of Good Faith and Fair Dealing (Count VI)

---

[2] The court assumes that this reference to $386,793, instead of $388,793, is a typographical error. In any event, the analysis of the promissory estoppel claim is the same.

8

Plaintiffs claim that defendants breached the covenant of good faith and fair dealing that is "implied in every contract." Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004). "The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." Id.

Plaintiffs allege that defendants breached the mortgage agreement's implied covenant of good faith and fair dealing by 1) failing to respond in writing to plaintiffs' loan modification application, 2) requesting funds in excess of the reinstatement amount due, and 3) failing to consider the short payoff offer. However, defendants had no obligation under the mortgage agreement to accept any of these methods to cure once plaintiffs defaulted. Where there is no contractual duty, there cannot be a breach of the covenant of good faith and fair dealing. The motion to dismiss is allowed as to Count VI for failure to state a claim.

    f.   Interference with Contractual Relations (Count IX)

The complaint alleges that defendants intentionally interfered with contractual relations first by refusing to acquiesce to a sale of the subplot for less than $420,000 and again by declining the $1.3 million offer for the sale of the entire property. Under Massachusetts law, to state a claim for interference with contractual relations, a plaintiff must allege the following elements: "(1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendants' knowledge of the contract or business relationship; (3) the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and

9

(4) damages." Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 338 (Mass. 1996); see also Shafir v. Steele, 727 N.E.2d 1140, 1144 n.10 (Mass. 2000) (explaining that the elements in Swanset "are elements of intentional interference with advantageous relations, which does not require a contract.").

Plaintiffs adequately allege a business relationship with the proposed subplot purchaser and with the prospective buyer of the entire property. There is no dispute that defendants had knowledge of those third-party relationships. The claim turns on whether defendants acted with an improper purpose or by any improper means.

(1) Subplot Sale

Defendants declined to release a portion of their security interest in a subplot of the property for less than $420,000. Plaintiffs argue that defendants' refusal was a violation of the mortgage contract, but as previously discussed, defendants were not bound to accept any reinstatement attempt that would alter their security interest. Thus, refusal of the subplot sale for $388,793 was merely an "assertion by a party of its legal rights [to the security interest, which] is not 'improper means' for purposes of a tortious interference claim." See Pembroke Country Club, Inc. v. Regency Sav. Bank, 815 N.E.2d 241, 247 (Mass. App. Ct. 2004).

(2) Short Payoff

Plaintiffs set out two violations regarding the short payoff. First, defendants declined to reduce the payoff amount from approximately $1 million to $800,000 "to account for late fees, interest, penalties and attorney fees accrued" during defendants' review of the loan modification and subplot offer. Defendants' denial was a "legitimate

10

advancement of its own economic interest [and] that motive is not 'improper.'" Id. at 246.

The complaint also alleges that defendant improperly interfered with the offer to purchase the property for $1.3 million. On April 12, 2019, plaintiffs submitted the offer to defendants' counsel, who directed plaintiffs to send it to SPS' loss mitigation department, which, in turn, sent plaintiffs to the short sale department. Plaintiffs checked the status of the short payoff six times between April and May 2019 and each time, SPS allegedly requested duplicative and conflicting information, including an MLS listing or contact information for a listing agent for the property. Plaintiffs submitted all the documentation and reiterated to SPS that there was no MLS listing or listing agent. On May 28, 2019, SPS declined a short pay off and offered to consider a short sale. From June to October 2019, SPS repeatedly requested an MLS listing or listing agreement and plaintiffs again responded that there was no such listing information. In October 2019, SPS notified plaintiffs that the listing period had ended and scheduled a foreclosure sale. Defendants' motion to dismiss offers no basis for the delay and ultimate denial of the $1.3 million offer to purchase. These allegations, taken together, plausibly state a claim that defendants improperly interfered with the sale of the property.

Accordingly, the motion to dismiss Count IX is allowed as to the subplot sale and denied with respect to the $1.3 million sale.

### g. Violation of Mass. Gen. Laws ch. 93A (Count V)

The complaint alleges that defendants engaged in unfair and deceptive actions in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

11

"Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'" Cummings v. HPG Int'l Inc., 244 F.3d 16, 25 (1st Cir. 2001) (quoting PMP Assoc. Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)).

Plaintiffs assert that defendants acted in a deceitful and unfair manner by failing to evaluate plaintiffs for loan modification, insisting on payment greater than the actual amount of the reinstatement amount due, and mishandling the short payoff.

In support of their loan modification claim under 93A, plaintiffs allege that between November 2018 and February 2019, they submitted 24 supplemental documents at SPS' request, including plot plans, appraisals, and documentation for home insurance and a title search. Nevertheless, defendants failed to consider plaintiffs for loan modification because plaintiffs attempted to sell the property at the same time. Defendants did not evaluate the plaintiffs for modification even after they rejected the sale. Plaintiffs' loan modification claim under 93A survives the motion to dismiss.

The 93A allegations regarding the subplot sale do not state a claim upon which relief may be granted because they are derivative of the claims previously discussed and dismissed. Plaintiffs' surviving claim for an equitable remedy under promissory estoppel is insufficient to maintain a 93A claim.

The complaint plausibly states a 93A claim regarding the short payoff. As discussed, plaintiffs allege that defendants requested duplicative and conflicting supplemental documents over a period of six months and ultimately denied the offer and scheduled the foreclosure sale without explanation.

The motion to dismiss Count V is denied insofar as it asserts liability as to the loan modification and short payoff claims.

**IV. Conclusion**

Defendants' Motion to Dismiss (Docket # 10) is ALLOWED as to Counts I, VI, and VIII and DENIED as to all other counts.

October 13, 2020
DATE

RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE